**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| VALUE DRUG COMPANY, on behalf of itself and all others similarly situated, | |
| Plaintiff, | |
| v. | Misc. Case No. ___ |
| TAKEDA PHARMACEUTICALS U.S.A., INC., PAR PHARMACEUTICAL INC., WATSON LABORATORIES, INC., TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., and AMNEAL PHARMACEUTICALS LLC, | Underlying Action: Case No. 2:21-cv-03500 (E.D. Pa.) |
| Defendants. | |

## VALUE DRUG COMPANY'S MOTION TO COMPEL
## <u>PRASCO LABORATORIES</u>

Value Drug Company, by and through its undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 45 to compel Prasco Laboratories to produce within fourteen days the transaction-by-transaction sales data in the form requested by Request No. 11 of the Subpoena to Prasco Laboratories served on September 13, 2021 and attached as Exhibit 1 to the accompanying Declaration of Caitlin G. Coslett.

The accompanying Memorandum in Support of Value Drug Company's Motion to Compel Prasco Laboratories sets forth the specific grounds for this motion.

Dated: April 4, 2022

VORYS, SATER, SEYMOUR AND
PEASE LLP

/s/ Emily E. St. Cyr
Emily E. St. Cyr
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, OH 45202
(513) 723-4674

(513) 852-7851 – fax
eestcyr@vorys.com

BERGER MONTAGUE PC
Caitlin G. Coslett*
1818 Market Street
Suite 3600
Philadelphia, PA 19103
215-875-3000
215-875-4604 – fax
ccoslett@bm.net

*Pro Hac Vice* Motion to be filed.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| VALUE DRUG COMPANY, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>TAKEDA PHARMACEUTICALS U.S.A., INC., PAR PHARMACEUTICAL INC., WATSON LABORATORIES, INC., TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., and AMNEAL PHARMACEUTICALS LLC,<br><br>      Defendants. | Misc. Case No. ____<br><br>Underlying Action:<br>Case No. 2:21-cv-3500 (E.D. Pa.) |

**MEMORANDUM IN SUPPORT OF VALUE DRUG COMPANY'S MOTION**
**<u>TO COMPEL PRASCO LABORATORIES</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 2

III.    LEGAL STANDARD ................................................................................................. 5

IV.     ARGUMENT .............................................................................................................. 6

        A.      The requested transactional sales data are undisputedly relevant........................... 7

        B.      It would not be unduly burdensome for Prasco to produce the requested
                data. ................................................................................................................. 9

        C.      Prasco's confidentiality concerns do not justify its refusal to comply
                with the subpoena. ........................................................................................ 12

V.      CONCLUSION ........................................................................................................ 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arclin USA, LLC v. Vits Tech. GmbH,*
    2020 WL 6882600 (S.D. Ohio Nov. 24, 2020) ........................................................... 5

*Brown v. Tax Ease Lien Servicing, LLC,*
    2017 WL 6940735 (W.D. Ky. Aug. 21, 2017) ........................................................... 5

*Direct Purchaser Class v. Apotex Corp.,*
    2017 WL 4230124 (S.D. Fla. May 15, 2017) ....................................................... 9, 12

*FTC v. AbbVie Inc.,*
    976 F.3d 327 (3d Cir. 2020) ................................................................................. 1

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,*
    424 F.3d 363 (3d Cir. 2005) ................................................................................. 7

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................... 8

*In re K-Dur Antitrust Litig.,*
    686 F.3d 197 (3d Cir. 2012) ................................................................................. 7

*In re K-Dur Antitrust Litig.,*
    2003 WL 27375780 (S.D. Fla. Aug. 21, 2003) ................................................... 9, 13

*In re Kleimar N.V. v. Benxi Iron and Steel America, Ltd.,*
    2017 WL 3386115 (N.D. Ill. Aug. 7, 2017) ......................................................... 12

*In re Mushroom Direct Purchaser Antitrust Litig.,*
    2012 WL 298480 (E.D. Pa. Jan. 31, 2012) ......................................................... 10

*In re Namenda Direct Purchaser Antitrust Litig.,*
    2017 WL 4700367 (S.D.N.Y. Oct. 19, 2017) ............................................... 9, 10, 11

*In re Neurontin Antitrust Litig.,*
    2011 WL 286118 (D.N.J. Jan. 25, 2011) .............................................................. 8

*In re Niaspan Antitrust Litig.,*
    464 F. Supp. 3d 678 (E.D. Pa. 2020) .................................................................. 8

*In re Novartis & Par Antitrust Litig.,*
    2019 WL 5722055 (E.D. Pa. Nov. 5, 2019) ................................................. 9, 10, 13

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   338 F.R.D. 294 (D. Mass. 2021) ................................................................ 8

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
   2013 WL 120240 (N.D. Ill. Jan. 9, 2013)................................................ 10

*Lavado v. Keohane*,
   992 F.2d 601 (6th Cir. 1993) ..................................................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ................................................................................... 7

*Ohio Dep't of Ins. v. RPM Mortg., Inc.*,
   2020 WL 6778212 (S.D. Ohio Nov. 18, 2020) ......................................... 5

*O'Malley v. NaphCare, Inc.*,
   311 F.R.D. 461 (S.D. Ohio 2015)....................................................... 6, 10

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ................................................................................... 6

*Prado v. Thomas*,
   2017 WL 515377 (S.D. Ohio Oct. 19, 2017) ............................................ 6

*State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*,
   364 F. Supp. 3d 758 (E.D. Mich. 2018) .................................................... 6

*Stewart v. Neil*,
   2021 WL 1192741 (S.D. Ohio Mar. 30, 2021) ......................................... 6

*Taylor v. Universal Auto Grp. I, Inc.*,
   2015 WL 1810316 (S.D. Ohio Apr. 17, 2015)........................... 9, 10, 13, 14

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
   813 F.2d 1207 (Fed. Cir. 1987) ............................................................... 13

*United States v. Int'l Bus. Machs. Co.*,
   67 F.R.D. 40 (S.D.N.Y. 1975)................................................................. 12

*Valley Drug Co. v. Geneva Pharm., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) ................................................................. 7

**Rules**

Fed. R. Civ. P. 26(b)(1).............................................................................. 5

Fed. R. Civ. P. 45 ................................................................................... 1, 5

Fed. R. Evid. 401(a) ................................................................................................................ 6

**Other Authorities**

E-Discovery and Antitrust Litigation,
 26 ANTITRUST 58 (2011) ....................................................................................................... 6

## I.     __INTRODUCTION__

Pursuant to Federal Rule of Civil Procedure 45, Plaintiff Value Drug Company ("Value Drug") moves to compel Prasco Laboratories ("Prasco") to produce transaction-level sales data for authorized generic ("AG") Colcrys, as requested by Request No. 11 in Value Drug's Subpoena *Duces Tecum* served on September 13, 2021.[1] The underlying action, *Value Drug Co. v. Takeda Pharmaceuticals, U.S.A., Inc.*, *et al.*, No. 21-cv-3500 (E.D. Pa.), involves an alleged multi-defendant corporate antitrust conspiracy regarding the drug Colcrys (colchicine). Value Drug brings claims under Sections 1 and 2 of the Sherman Act on behalf of a class of direct purchasers of brand and generic Colcrys, including AG Colcrys.[2] On March 30, 2022, Judge Kearney denied Defendants' motions to dismiss the Amended Complaint as to Value Drug's claims for an overarching conspiracy to restrain trade, monopolization, and conspiracy to monopolize.[3]

The requested transaction-level AG Colcrys sales data are undisputedly relevant to damages and to Value Drug's class certification expert report(s), which are due July 21, 2022 in *Value Drug Co. v. Takeda Pharmaceuticals, U.S.A., Inc.*, *et al.*, No. 21-cv-3500 (E.D. Pa.), which is pending before the Honorable Mark A. Kearney.[4] In addition, Prasco's AG Colcrys sales data are only obtainable from Prasco—and not from Defendants or other non-parties—as Prasco itself confirmed during the meet and confer process.

---

[1] *See* Ex. 1 (the "Subpoena"). All exhibits cited herein are to the accompanying Declaration of Caitlin G. Coslett.

[2] An "authorized generic" is a generic version of a brand drug produced by the brand-name company or produced by a third party licensed to do so. *See FTC v. AbbVie Inc.*, 976 F.3d 327, 339 (3d Cir. 2020) (describing authorized generics and the role of authorized generics in pharmaceutical competition).

[3] *See* Memorandum-Order, *Value Drug Company v. Takeda Pharmaceuticals, U.S.A., Inc. et al.*, 2:21-cv-03500 (E.D. Pa. Mar. 30, 2022), ECF No. 207.

[4] *See* Scheduling Order, *Value Drug Co. v. Takeda Pharmaceuticals, U.S.A., Inc.*, *et al.*, No. 21-cv-3500 (E.D. Pa.), ECF 94.

Prasco does not dispute the relevance of the requested transactional sales data, nor has Prasco demonstrated that producing its data would be unduly burdensome (it would not). Instead, Prasco refuses to produce its transactional sales data citing confidentiality concerns. But Prasco's purported confidentiality concerns provide no basis for its refusal to comply with the Subpoena because (a) the sales data cover sales Prasco made at least three years ago, (b) the data involve a product (AG Colcrys) that Prasco does not even sell anymore, and (c) the sales data can be designated "Highly Confidential" under the operative Protective Order Agreement in the underlying case, which will provide adequate confidentiality protections. As discussed below in Section IV.C, courts have, in similar cases, repeatedly compelled production of transactional sales data over similar confidentiality objections.

Given the undisputed relevance of the requested transactional sales data, the lack of burden to production, and the fact that Prasco's confidentiality concerns provide no basis for its refusal to comply with the Subpoena, Value Drug respectfully requests that the Court enter the proposed order submitted herewith directing Prasco to produce within 14 days its transaction-level AG Colcrys sales data in the form requested in Subpoena Request No. 11. Prompt production of this data is warranted because Value Drug's class certification expert reports are due in less than four months and the requested data are relevant to identifying class members and calculating damages.

## II.     **BACKGROUND**

This case is an antitrust class action pending in the Eastern District of Pennsylvania alleging that Defendants conspired to delay competition, reduce output, and maintain monopoly prices for its brand gout drug Colcrys® ("Colcrys"). Prasco started selling AG Colcrys on January 11, 2015. Am. Compl. ¶ 104. With generic competition looming along with the threat of falling prices, Takeda established a joint venture wherein Par would forego launching its generic

product on July 29, 2016, replace Prasco as the seller of AG Colcrys on July 1, 2018, and remit a substantial portion of profits to Takeda. *Id.* ¶ 110. The goal of the conspiracy was to maintain the colchicine monopoly, including by allocating 100 percent of the market to Takeda for several more years; restricting output of competing generic Colcrys products; and sharing in anticompetitive profits. *Id.* ¶¶ 222, 262. Prasco sold AG Colcrys from January 2015 through July 2018, when Defendant Par started selling AG Colcrys. *Id.* ¶ 149. Absent the conspiracy, Prasco would have faced competition from Par and other generic Colcrys manufacturers, resulting in lower prices for AG Colcrys. *Id.* ¶¶ 180-82.

Value Drug served the Subpoena on Prasco on September 13, 2021. Ex. 1 (Subpoena). Despite extensive meet and confer efforts, Value Drug was unable to reach agreement with Prasco. The meet and confer history is as follows:

- On September 22, 2021, Prasco sent a letter to Value Drug generally objecting to the Subpoena but offering to meet and confer. Ex. 2 (Prasco's Sept. 22, 2021 Letter to Value Drug).

- On September 29 and October 13, 2021, Value Drug and Prasco had meet and confer calls.

- On October 25, 2021, Value Drug sent a letter to Prasco offering to substantially narrow the scope of the Subpoena in an effort to reach compromise. Ex. 3 (Value Drug's Oct. 25, 2021 Letter to Prasco).

- On October 29, 2021, Value Drug asked Prasco's counsel when it could expect a response, to which Prasco responded that it "anticipate[d] responding soon." Ex. 4 at 12-13 (email chain between counsel for Value Drug and counsel for Prasco).

- Months went by without any communication from Prasco.

- On March 4, 2022, Value Drug contacted Prasco and requested an update on the status of Prasco's response to Value Drug's October 29, 2021 proposal. *Id.* at 12.

- On March 7, 2022, Prasco responded that it had "paused the analysis" of Value Drug's October 29, 2021 proposal. *Id.* at 11-12.

- On March 8, 2022, Value Drug wrote to Prasco that this was the first Value Drug had heard of any "pause" of the analysis and requested an immediate response as to whether and when Prasco would produce its transactional sales data. *Id.* at 10.

- On March 18, 2022, Prasco responded that it would not agree to produce its transactional sales data for colchicine because such information was competitively sensitive and Prasco did not want it to be seen by its competitors in the pharmaceutical industry. *Id.* Prasco instead offered to produce "high-level summary data." *Id.* at 7-8.

- On March 23, 2022, Value Drug wrote to Prasco explaining that high-level summary data were inadequate. Value Drug also explained that: (1) courts in other pharmaceutical antitrust actions have compelled third parties to produce transactional sales data over similar confidentiality objections to those that Prasco raises; (2) Prasco's confidentiality concerns were adequately addressed by the extremely restrictive Protective Order Agreement[5] in this action, which Value Drug sent to Prasco on October 29, 2021, under which Prasco could designate its transactional sales data "Highly Confidential"; and (3) the transactional sales data that Prasco claims are competitively sensitive are stale as Prasco has not sold a generic Colcrys product for some years, meaning that disclosure will not harm Prasco's ongoing or future business interests. *Id.* at 6-7.

---

[5] *See* Ex. A to Joint Motion for Protective Order, *Value Drug Co. v. Takeda Pharmaceuticals, U.S.A., Inc., et al.*, No. 21-cv-3500 (E.D. Pa.), ECF 100-1.

- On March 24, 2022, Prasco responded saying that it was giving "final consideration" to the issue of producing its colchicine transactional sales data in light of the points raised by Value Drug on March 23, 2022. *Id.* at 3-4.

- On March 28, 2022, Prasco confirmed that there was an impasse as to its transactional sales data, citing the same confidentiality concerns. *Id.* at 2-3.

- On March 30, 2022, following a meet and confer call, Prasco reiterated its refusal to produce transaction-level sales data, and Value Drug confirmed on April 1, 2022 that Value Drug would move to compel production of Prasco's colchicine transactional data because, *inter alia*, the data are necessary for Value Drug (and Value Drug's expert) to calculate the prices that Value Drug (and members of the class Value Drug seeks to represent) actually paid for AG Colcrys. *Id*. at 1-2.

## III.   <u>LEGAL STANDARD</u>

"Under Rule 45 of the Federal Rules of Civil Procedure, a party may command a nonparty to produce documents." *Arclin USA, LLC v. Vits Tech. GmbH*, 2020 WL 6882600, at *2 (S.D. Ohio Nov. 24, 2020). "[T]he scope of discovery under a [Rule 45] subpoena is the same as the scope of discovery under Rule 26." *Ohio Dep't of Ins. v. RPM Mortg., Inc.*, 2020 WL 6778212, at *1 (S.D. Ohio Nov. 18, 2020); *Brown v. Tax Ease Lien Servicing, LLC*, 2017 WL 6940735, at *2-3 (W.D. Ky. Aug. 21, 2017) (same). Rule 26(b)(1) provides that discovery encompasses that which "is relevant to any party's claim or defense and proportional to the needs of the case," and "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Relevancy is broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or merits of the case. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("The key phrase in this definition—'relevant to the subject matter

involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). "'Relevant evidence' is broadly defined as evidence that 'has any tendency to make a fact more or less probable than it would be without the evidence. . . .'" *Stewart v. Neil*, 2021 WL 1192741, at *4 (S.D. Ohio Mar. 30, 2021) (quoting Fed. R. Evid. 401(a)).

Once a requesting party makes a showing that the information sought is relevant, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, 2017 WL 515377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)). Motions to compel are "within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993) (internal quotation omitted). Any nonparty asserting an undue burden must "be prepared to support [the] allegations . . . with detailed cost and time calculations, supported by knowledgeable declarations." *State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc.*, 364 F. Supp. 3d 758, 767 (E.D. Mich. 2018).

## IV. <u>ARGUMENT</u>

The requested transaction-level sales data are undisputedly relevant and not burdensome to produce. In addition, Prasco's confidentiality concerns provide no basis for its refusal to comply with the Subpoena.

Antitrust cases are generally data intensive. *See* F. Matthew Ralph & Caroline B. Sweeney, E-Discovery and Antitrust Litigation, 26 ANTITRUST 58, 61 (2011) ("[T]he production of voluminous transactional data . . . in an antitrust case is routine and happens in every case.") (internal marks and citation omitted). Economic analysis can make or break a case, and it frequently requires substantial data analysis. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632 (1985) ("[A]ntitrust issues, prone to complication,

require sophisticated legal and economic analysis."). Denying necessary data discovery can constitute reversible error. *See, e.g.*, *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1192 (11th Cir. 2003) (vacating antitrust decision for failure to allow appropriate data discovery).

A. **The requested AG Colcrys transactional sales data are undisputedly relevant.**

Here, Value Drug seeks Prasco's colchicine transactional sales data. These data are not obtainable from any other source and will allow Value Drug (and Value Drug's expert) to calculate the prices that Value Drug and the members of the class Value Drug represents actually paid for AG Colcrys. This is relevant to the calculation of overcharge damages because overcharges are the differences between prices actually paid (including prices paid for AG Colcrys from Prasco) and the lower prices that would have been paid absent the challenged anticompetitive conduct.[6] Prasco's sales data supply inputs used to determine the amount of authorized generic Colcrys purchased and the net prices class members actually paid for the generic. Value Drug and its experts will use these inputs to model the quantities that would have been purchased and the (lower) prices that class members would have paid absent the challenged anticompetitive conduct. In addition, the proposed class that Plaintiff represents in this case includes purchasers of AG Colcrys, and as such, Prasco's transactional data are relevant to identifying class members during the class certification process.[7] Moreover, transactional sales

---

[6] "[A] plaintiff suffers an antitrust injury where it is overcharged for a product." *In re K-Dur Antitrust Litig.*, 686 F.3d 197, 221 (3d Cir. 2012), *reinstat. granted*, 2013 WL 5180857 (3d Cir. Sept. 9, 2013); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 374-75 (3d Cir. 2005) ("[T]he standard method of measuring damages in price enhancement cases is overcharge," i.e., "the difference between the actual price and the presumed competitive price multiplied by the quantity purchased.") (quotation omitted).

[7] Am. Compl. ¶ 171. On March 30, 2022, Prasco offered to identify direct purchasers of AG Colcrys, but this is insufficient because, again, Prasco's transactional sales data are also relevant to calculating damages.

data are routinely produced and utilized in antitrust class action cases involving claims of anticompetitive conduct in the pharmaceutical industry to assess, for example, injury and damages to classes of direct purchasers similar to the direct purchaser class Value Drug has sued on behalf of here. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (finding that expert analysis of "claims and potential damages based on sales data produced by Defendants, Plaintiffs, and the pharmaceutical industry itself" weighed in favor of settlement approval); *In re Ranbaxy Generic Drug Application Antitrust Litig*, 338 F.R.D. 294, 303 (D. Mass. 2021) (holding that plaintiff established classwide injury through, *inter alia*, analysis of transaction-level sales data); *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 702 (E.D. Pa. 2020) (finding "transactional level purchase data regarding purchases of Niaspan and its generic equivalents during the class period" relevant to identifying class members); *In re Neurontin Antitrust Litig.*, 2011 WL 286118, at *7 (D.N.J. Jan. 25, 2011) (proof of harm included "transactional data reflecting that the generics' actual market entry did in fact reduce the cost of gabapentin dramatically").

Here, Prasco has not disputed that the requested transactional sales data are relevant to the underlying antitrust litigation (nor can it).[8] Indeed, as Value Drug explained to Prasco during meet and confers, transactional sales data are routinely requested and produced by non-parties—in this case and others—under similar circumstances, usually voluntarily but by court order if needed. *See In re Novartis & Par Antitrust Litig.*, 2019 WL 5722055, at *6 (E.D. Pa. Nov. 5, 2019) (compelling production of transactional sales data from a non-party because "data

---

[8] To the extent Prasco asserts relevancy objections to its customer name information, the customer name information is relevant and necessary to identify the volume of Prasco's AG sales made to members of the putative class and the prices that class members actually paid, which is relevant to Plaintiffs' damages calculations and the allocation of damages following judgment. Prasco's proposal to produce "high-level sales data" is thus insufficient because such data would not allow Plaintiff to identify purchases by class members.

pertaining to generic brands in antitrust cases i[s] routinely produced"); *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4700367, at *2 (S.D.N.Y. Oct. 19, 2017) (enforcing subpoena compelling non-party generic manufacturer to produce transactional sales data and related records over relevancy, burden, and confidentiality objections, noting that "[t]here is little question that the transactional sales information sought by the plaintiffs is relevant"); *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, 2017 WL 4230124, at *7-*8 (S.D. Fla. May 15, 2017) (enforcing subpoena compelling non-party generic manufacturer to produce transactional sales data and related records where they were relevant to "determining damages in the Antitrust Litigation" and holding that these data are "necessary to an element of the claims in the Antitrust Litigation"); *In re K-Dur Antitrust Litig.*, 2003 WL 27375780, at *1-*2 (S.D. Fla. Aug. 21, 2003) (enforcing subpoena compelling non-party generic manufacturer to produce transactional sales data and related records over relevancy objection and concern about confidentiality).

Prasco has offered to produce, instead of the requested transactional sales data, a "high-level summary" of its data, but, as explained in *Namenda,* summary data are insufficient because an "outline of customer sales data is insufficient in a case such as this, where more specific material would be expected to support the plaintiffs' case. Additionally, the summary does not detail sales specific to customers, and those sales could inform an analysis of class member damages and injuries." *Namenda*, 2017 WL 4700367, at *3.

**B.      It would not be unduly burdensome for Prasco to produce the requested data.**

Prasco has also not come close to supporting its assertion that production would be burdensome.  A non-party "cannot rely on a mere assertion that compliance would be burdensome." *Taylor v. Universal Auto Group I, Inc.*, 2015 WL 1810316, at *4 (S.D. Ohio Apr. 17, 2015). Prasco bears the burden of establishing any undue burden. *See id.* ("If the discovery

sought appears relevant on its face, the party resisting the discovery has the burden to establish the lack of relevance, or that the information sought is proprietary and its disclosure might be harmful." (internal quotation omitted)); *O'Malley v. NaphCare Inc.*, 311 F.R.D. at 463 ("When the information sought appears to be relevant, the party resisting production has the burden of establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm.") (internal quotations omitted).

There is no burden here. Prasco's data can be readily accessed through a direct pull from its central servers as is routinely done in pharmaceutical antitrust actions. *See In re Novartis and Par Antitrust Litig.*, 2019 WL 5722055, at *6 (compelling production of transactional sales data by a nonparty as they "neither extraordinary or burdensome"); *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4700367, at *3 (granting motion to compel production of non-party generic manufacturer's sales data over manufacturer's "unpersuasive" burden argument). *See also Kleen Prods. LLC v. Packaging Corp. of Am.*, 2013 WL 120240, at *9 (N.D. Ill. Jan. 9, 2013) (granting plaintiffs' motion to compel the production of pre- and post- class period documents and transactional data in light of the "expansive view of discovery in antitrust cases" and "[d]efendants' lack of demonstration of burden"); *In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480, at *7 (E.D. Pa. Jan. 31, 2012) (compelling production of a non-party's transactional sales data over its objections that production would be unduly burdensome).

*Namenda*, which overruled a non-party's argument that producing transaction-level sales data would be burdensome, is instructive. There, in evaluating a non-party's burden argument the court examined "such factors as relevance, the need of the party for the documents, the breadth

of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." *Namenda*, 2017 WL 4700367, at *2. Further, the non-party generic manufacturer in *Namenda*, unlike Prasco here, submitted a good faith cost estimate to particularize its burden claim. *Id.* at *3. That good faith cost estimate provided that production of the requested "sales data at the transactional level would require 150 hours of employee time, cost between $10,000[] and $15,000, and take approximately twenty-seven days to compile." *Id*. The *Namenda* court nonetheless found the non-party's burden argument "unpersuasive" and outweighed in the proportionality calculus because: (1) the non-party generic manufacturer was "the only source for the requested information," (2) the "potential damages" in the litigation vastly exceeded the cost of the requested discovery, (3) the non-party generic manufacturer had "over 10% of generic Namenda IR sales in the United States, making it the fourth largest seller of the product," and (4) plaintiffs' request was appropriately tailored. *Id.* The Court should find the same here. *First*, as in *Namenda*, Prasco is the only source of the requested transactional sales data.[9] *Second*, the "potential damages" in this litigation may run into the hundreds of millions of dollars and, thus, it is safe to assume that they easily exceed the cost of the requested discovery from Prasco.[10] *Third*, Prasco was the only seller of AG Colcrys prior to July 2018, making Prasco a key colchicine market player. *Fourth*, Value Drug's motion to compel is targeted to transactional sales data as described in Subpoena Request No. 11.

   In short, Prasco has failed to show that producing this undisputedly relevant data would

---

[9] Prasco represented to Plaintiff's counsel on a March 29, 2022 meet and confer call that Takeda does not have the transactional sales data that Plaintiff seeks.

[10] For the twelve months preceding December 31, 2013, brand Colcrys had total U.S. sales of approximately $629 million. Am. Compl. ¶ 37.

be unduly burdensome. *See generally In re Kleimar N.V. v. Benxi Iron and Steel Am., Ltd.*, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) ("[P]roducing communications (even voluminous communications) that [a non-party] has already identified is not unduly burdensome.").

> **C.** **Prasco's confidentiality concerns do not justify its refusal to comply with the subpoena.**

Prasco argues that its refusal to produce the requested transaction-level data is justified because the data purportedly contain commercially sensitive information. But the transactional sales data Value Drug seeks from Prasco are several years old and pertain to a product Prasco no longer sells, mooting any confidentiality concerns. *See, e.g.*, *United States v. Int'l Bus. Machs. Co.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975) (declining to protect sales data unavailable to the public because "[n]one of th[e] data [was] current" and it "reveal[ed] . . . little, if anything at all, about Honeywell's current operations").

In addition, as Value Drug explained to Prasco, any confidentiality concerns are adequately addressed by the stipulated protective order in this case, which allows Prasco to designate its data as "Highly Confidential" in order to ensure and protect Prasco's data including by placing tight limits on the dissemination of Prasco's data to its competitors. The stipulated protective order would address Prasco's confidentiality concerns because employees of the parties, including the parties' in-house counsel, are not allowed to review documents or data files designated "Highly Confidential" and may, under only limited circumstances, view expert reports or pleadings that cite such "Highly Confidential" data. *See Value Drug Co. v. Takeda Pharmaceuticals, U.S.A., Inc., et al.*, No. 21-cv-3500 (E.D. Pa.), ECF 100-1, at ¶ 4.

Courts have repeatedly ordered production of the same transactional sales data sought from Prasco here (including the customer names Prasco seeks to withhold from production) over similar confidentiality objections. *See Direct Purchaser Class v. Apotex Corp.*, 2017 WL

12

4230124, at *5 (compelling production of third party's sales data and finding that the "Protective Order will provide sufficient protection of Respondent Apotex Corp.'s sales data"); *In re Novartis and Par Antitrust Litig.*, 2019 WL 5722055, at *9 (ordering production of confidential sales data over confidentiality objections[11]); *In re K-Dur Antitrust Litig.*, 2003 WL 27375780, at *2 (ordering production of electronic sales data from a non-party because protective order addressed any confidentiality concerns). *See also In re K-Dur Antitrust Litig.*, 2003 WL 27375780, at *2 (third party's confidentiality concern "is addressed by the implementation of an appropriate confidentiality order, which is already in place in this case, and to which Andrx has voiced no objection"); *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1211 (Fed. Cir. 1987) ("The normal and expected reluctance of business firms to disclose sales information, however, is in itself an insufficient basis on which to deny discovery of that information under appropriate protection from divulgement to competitors.").

Courts in this District have also compelled production, overruling similar confidentiality objections. For example, in *Taylor v. Universal Auto Grp. I, Inc.*, the plaintiff, representing a putative class in a Telephone Consumer Protection Act action, served a subpoena on a nonparty seeking lists of persons who received calls similar to those received by the plaintiff, complaints from consumers about such calls, and the non-party's internal records of the calls it made on behalf of the defendant. 2015 WL 1810316, at *3. The nonparty objected, maintaining that compliance would require disclosure of protected commercial information and personal identifying information about the individuals it called. *Id.* at *5-6. The court disagreed and compelled production because the identities of the individuals who received similar calls were

---

[11] *In re Novartis and Par Antitrust Litig.* limited access of the nonparty's produced documents to outside counsel. 2019 WL 5722055, at *11. Value Drug does not oppose an order compelling production and limiting disclosure of Prasco's sales data to outside counsel and experts in this case.

relevant for class certification and any privacy concerns could be addressed by entry of a protective order. *See id.* at *6.

## V.   <u>CONCLUSION</u>

For the reasons stated above, this Court should grant Value Drug's motion to compel and enter the proposed order directing Prasco to produce within fourteen (14) days its transaction-by-transaction sales data in the form requested in Request No. 11 of the Subpoena.

Dated: April 4, 2022                    VORYS, SATER, SEYMOUR AND
                                        PEASE LLP

                                        /s/ Emily E. St. Cyr
                                        Emily E. St. Cyr
                                        301 East Fourth Street, Suite 3500
                                        Great American Tower
                                        Cincinnati, OH 45202
                                        (513) 723-4674
                                        (513) 852-7851 – fax
                                        eestcyr@vorys.com


                                        BERGER MONTAGUE PC
                                        Caitlin G. Coslett*
                                        1818 Market Street
                                        Suite 3600
                                        Philadelphia, PA 19103
                                        215-875-3000
                                        215-875-4604 – fax
                                        ccoslett@bm.net

                                        **Pro Hac Vice* Motion to be filed.

## <u>CERTIFICATE OF SERVICE</u>

I, Emily E. St. Cyr, hereby certify that on April 4, 2022, I caused a copy of the foregoing

document to be served via email upon the following counsel for Prasco Laboratories:

Alan H. Abes, Esquire
DINSMORE
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
alan.abes@dinsmore.com

/s/ Emily E. St. Cyr
Emily E. St. Cyr