UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VALUE DRUG COMPANY, on behalf of itself and all others similarly situated,<br><br>         Plaintiff,<br><br>         v.<br><br>TAKEDA PHARMACEUTICALS U.S.A. *et al*,<br><br>         Defendants. | Civil Action 1:22-mc-00013<br><br>Judge Matthew W. McFarland<br>Magistrate Judge Stephanie K. Bowman |

**PRASCO LABORATORIES' MEMORANDUM IN OPPOSITION TO VALUE DRUG CO.'S (1) MOTION TO COMPEL (DOC. 1) AND (2) MOTION TO TRANSFER (DOC. 2)**

**PRELIMINARY STATEMENT**

Plaintiff Value Drug Co. filed two motions against Prasco, LLC dba Prasco Laboratories ("Prasco") related to a subpoena ("Subpoena") Plaintiff served on Prasco at its principal place of business in Mason, Ohio. Plaintiff served the Subpoena in litigation pending in the United States District Court for the Eastern District of Pennsylvania (the "EDPA Litigation"). Prasco is not a party to the EDPA Litigation, but several of its direct competitors are defendants in that case. Nonetheless, Plaintiff seeks production of highly confidential and particularized customer sales transaction data crucial to Prasco's competition in the generic pharmaceutical market.

Prasco objected to producing such competitively sensitive information that would identify specific customer sales and pricing, but offered to produce (and now has produced) other information proportionate to the needs of the case that would not unduly burden Prasco by disclosing its most sensitive information to competitors. Prasco asked Plaintiff to accept nearly four years' worth of confidential profit and loss statements, inventory reports, and production forecasts to allow Plaintiff to calculate market pricing information not linked specifically to

particular customers, along with a customer list to let Plaintiff identify potential class members. Plaintiff not only refused to accept that reasonable approach, but seeks to have this dispute heard in the EDPA Litigation notwithstanding Plaintiff's failure to demonstrate the "exceptional circumstances" required under Rule 45 for transfer away from the compliance court convenient to the subpoena recipient. The Court should deny both motions. "An antitrust action does not come with an automatic entitlement to force non-parties to reveal their competitive thinking." *In re Ebay Seller Antitrust Litig.*, 2009 U.S. Dist. LEXIS 146473, *15 (W.D. Wash. Aug. 14, 2009).

**First,** Plaintiff filed a Motion to Compel (ECF No. 1) seeking line-by-line production of voluminous and highly confidential customer sales transaction data that would disclose the exact pricing agreements Prasco arranged with specifically-identified customers. That production would be disproportionate and impose undue burden on Prasco by disclosing its most sensitive competitive data. Prasco is a private company that depends on keeping such data confidential to remain competitive. *See* Declaration of Jonathan Lapps ("Lapps Decl."), Prasco's Executive Vice President, Business Development, Ex. 1 hereto at ¶ 3-10, 15.

Plaintiff purportedly needs Prasco's customer transaction data to identify (i) amounts sold; (ii) net prices; and (iii) class members. (ECF No. 1 at 7.) Prasco, however, already produced nearly four years' worth of confidential sales, inventory, and production reports that, together with the customer list also produced, satisfy Plaintiff's needs without identifying for Prasco's competitors how much Prasco charges particular customers. PRASCO 00129-221; Lapps Decl., ¶ 14-15. A prior decision addressing a virtually verbatim request by Plaintiff's counsel in other generic drug antitrust litigation confirms that Prasco's summary data production is sufficient. *In re Novartis & Par Antitrust Litig.*, 2019 U.S. Dist. LEXIS 191606, *28 (E.D. Pa. Nov. 5, 2019) (ordering that non-party could "provide summaries of this material where it deems fit").

Instead of following the holding in *Novartis* as a reasonable compromise, Plaintiff relies heavily on *In re Namenda Direct Purchaser Antitrust Litigation*, 2017 U.S. Dist. LEXIS 173403, *9 (S.D.N.Y. Oct. 19, 2017).  That case, however, involved a far less onerous request.  *See* Ex. 2 hereto (comparing and contrasting the requests here, in *Novartis*, and in *Namenda*).  Plaintiff's cite to *Namenda* also employs selective quotation to obscure the fact that the non-party produced hundreds of times less data than Prasco.  (ECF No. 1 at 9, quoting *Namenda* but deleting "a one-page" before the phrase "outline of customer sales data is insufficient.")

**Second,** Plaintiff filed a Motion to Transfer Motion to Compel (ECF No. 2).  The Motion to Transfer should be denied because this dispute does not present the "exceptional circumstances" that Rule 45 requires.  The dispute is not so intertwined with the issues in the EDPA Litigation as to require that court's participation.  This Court can determine the issues outlined above without any special knowledge of the EDPA Litigation.  Moreover, as a local nonparty uninvolved in the underlying case, Prasco should not be required to defend in a distant venue.  That is especially true because the parties in that case depend only on their modifiable private agreement to protect confidentiality instead of the court issuing a protective order doing so.

## BACKGROUND

### A.     Prasco Relies on Sensitive Customer Pricing Information to Compete

Prasco is a private pharmaceutical company headquartered in Mason, Ohio.  Lapps Decl., ¶ 3.  Founded in 2002, Prasco specializes in selling "authorized generics," which are generic drugs manufactured by the branded company but marketed under a private label.  *Id.*  Prasco competes in that market primarily on the basis of price and customer relationships; Prasco's prices, therefore, including historical prices offered to specific customers, are highly sensitive competitive data that Prasco protects carefully.  *Id., ¶* 4-9.  Prasco's historical pricing information, even as to products that Prasco no longer sells or customers that Prasco no longer serves, would reveal key aspects of

Prasco's confidential and proprietary pricing methodology, as well as competitive market information as to certain customers that, if known, would adversely affect Prasco's ongoing ability to sell products to current or prospective customers. *Id.,* ¶ 10.

Prasco maintains such "Confidential Pricing Information" in strict confidence and discloses Confidential Information only as needed within Prasco. Prasco does not disclose Confidential Information voluntarily to third-parties. Nor does Prasco disclose the Confidential Information to the brand partners whose products Prasco sells. *Id.,* ¶ 5-6. Prasco takes further care not to disclose its Confidential Pricing Information to competitors in the generic pharmaceutical market. Such competitors include, but are not limited to, the following defendants in the EDPA Litigation: Endo Pharmaceuticals; Par Pharmaceutical; Watson Laboratories (n/k/a Actavis Generics); Teva Pharmaceuticals USA; and Amneal Pharmaceuticals. *Id.,* ¶ 7.

Prasco's Confidential Pricing Information enables it to have a competitive advantage in the generic pharmaceutical market. Prasco's competitors would benefit to Prasco's detriment by obtaining access to Prasco's Confidential Pricing Information. Prasco maintains the secrecy of its Confidential Information, and that secrecy has economic value. *Id.,* ¶ 8, 10. Moreover, Prasco's customers also treat Prasco's Confidential Pricing Information as confidential information of their own. Prasco's customer agreements contain confidentiality provisions protecting the Confidential Pricing Information from disclosure. *Id.,* ¶ 7.

### B. Prasco's Relationship to the Authorized Generic at Issue, and Related Data

As Plaintiff summarized, in 2009, the branded company Takeda Pharmaceuticals U.S.A., Inc. ("Takeda") obtained approval from the FDA to be the exclusive seller of Colcrys, an anti-inflammatory tablet used to treat gout attacks and Familial Mediterranean Fever. In 2014, Prasco

entered into an agreement with Takeda for Prasco to sell the authorized generic version of Colcrys ("AG Colcrys"). Prasco sold AG Colcrys from 2015 until June 2018. *Id.,* ¶ 11.

Prasco maintains line-by-line data for AG Colcrys transactions with specific customers, including volumes sold, prices, and discounts (the "Transaction Data"). The Transaction Data constitute Prasco's Confidential Pricing Information, and some of its most sensitive competitive information. Prasco does not even share the Transaction Data with Takeda. *Id.,* ¶ 6, 12.

Like other detailed transaction data maintained by Prasco, this extensive line-by-line AG Colcrys Transaction Data reveal Prasco's pricing methodology for altogether different products and customers. The Transaction Data further reveal Prasco's pricing strategies that apply currently both to prior AG Colcrys customers with whom Prasco has ongoing, broader pricing arrangements, and new customers to whom the approaches evident in the Transaction Data will apply. It also reveals Prasco's pricing strategies for products generally, not just AG Colcrys. *Id.,* ¶ 14.

As required by Prasco's agreement with Takeda, Prasco regularly provided Takeda with AG Colcrys transaction reports ("Transaction Reports") that effectively summarize the key, material aspects of the line-by-line Transaction Data (i*d.,* ¶ 14.a-c.):

- Monthly and annual profit split reports - detailing, among other things (i) net sales; (ii) the gross amount billed; (iii) deductions, including (a) amounts actually allowed or taken (cash discounts, customer rebates, initial order discounts), (b) amounts accrued (rejected or returned goods, government rebates, charge backs, anticipated future shelf stock adjustments), and (c) adjustments to amounts previously accrued; and (iv) inventor supply prices, including the number of units sold.

- Monthly inventory reports - detailing (i) product inventory levels; (ii) the quantity of product shipped by Prasco; (iii) the quantity of product received; and (iv) the cost per unit.

- Production forecasts – detailing monthly open orders and orders to be placed.

Prasco produced templates of these reports to Plaintiff on March 28, 2022, along with its full agreements with Takeda and other notices related to those agreements. PRASCO 00001-128. Prasco produced all of the confidential Transaction Reports on April 25, 2022 covering its entire history selling AG Colcrys from 2015-2018. PRASCO 00129-221. That same day, Prasco produced a confidential list of all customers to which it sold AG Colcrys. PRASCO 00222-23. The data in the Transaction Reports for units sold and net sales are sufficient to determine the amount of AG Colcrys sold by Prasco and the average net selling prices without linking such data to any specific customer, which would be to Prasco's competitive detriment. Lapps Decl., ¶ 15. The customer list also discloses fully the potential class members known to Prasco without needing to review the Transaction Data to identify those same customers.

### C. The EDPA Litigation

#### 1. Procedural Status

On August 5, 2021, Plaintiff filed a putative class action complaint alleging that in 2014, Takeda and three generic pharmaceutical companies (Par, Watson, and Amneal) conspired to reduce competition for Colcrys by entering into agreements delaying the entry of competing generic drugs into the market even after Takeda's period of exclusivity expired on July 29, 2016. (ECF No. 1, *Value Drug Co. v. Takeda Pharmaceuticals, U.S.A., Inc., et al.*, No. 21-cv-3500 (E.D. Pa.) ("PA ECF" 1)). Plaintiff asserts that under this agreement, Par replaced Prasco in July 2018 as seller of AG Colcrys. Plaintiff seeks to certify a class of all direct purchasers of branded or generic Colcrys tablets from Takeda, Prasco, or Par at any time since July 29, 2016.

On December 28, 2021, the court dismissed Plaintiff's claims as to all but one of the parties (due to a jurisdictional dispute) and allowed Plaintiff until January 18, 2022 to file an amended complaint. (PA ECF No. 154). Plaintiff did not advise Prasco of the court's ruling, but for the

6

next three weeks, lacked any claims on which it could even pursue production. Plaintiff filed an amended complaint on January 18, 2022, again not naming Prasco and alleging that the defendants conspired to delay market entry of additional generic Colcrys products, thereby reducing the supply of Colcrys and raising prices. (PA ECF No. 163). On February 1, 2022, the defendants moved to dismiss the amended complaint (PA ECF Nos. 168-170), and on February 8, filed a joint motion to stay discovery (PA ECF No. 171). The court substantially denied the motion to stay on February 11. (PA ECF No. 173). On March 30, the court denied in part the motions to dismiss the amended complaint. (PA ECF No. 207).

### 2. Treatment of Confidential Information

On October 26, 2021, the parties to the EDPA Litigation moved jointly for the entry of a protective order to safeguard confidential information produced in discovery. (PA ECF No. 100). The court denied the motion that very same day, stating:

> The parties may provide for confidentiality **in their private discovery** by way of a **confidentiality agreement** consistent with *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). We will, upon Motion, review a claim for breach of a **private confidentiality agreement** related to this case.
>
> As detailed in our Policies, we review confidentiality over specific filings in Court upon the filing of a motion (before unilaterally sealing) and our applying the **exacting common law right of access** standard or possible First Amendment strict scrutiny standard under *In re: Avandia Mktg., Sales Practices and Products Liab. Litig.* 924 F.3d 662, 671-73 (3d Cir. 2019).

(PA ECF No. 101 at PageID 1, emphasis added).

Accordingly, the court did not enter a protective order for discovery and did not enter an order generally governing the treatment of confidential information for court filings or at an eventual trial. The parties entered into a "Protective Order Agreement" per the court's ruling. (PA ECF No. 101-1). The Protective Order Agreement allows information produced in the parties' "private discovery" to be designated as Confidential or Highly Confidential, as Plaintiff described.

On April 13, 2022, after Plaintiff filed its Motion to Compel, Plaintiff moved the court in the EDPA Litigation to modify the Protective Order Agreement by adding a designation for "outside counsel only" that would apply to production by non-parties such as Prasco where appropriate. (PA ECF No. 218). Takeda opposed the designation except as to one non-party (not Prasco) against whom Takeda is litigating separately. (PA ECF No. 229). Accordingly, because the Protective Order Agreement is a private agreement between the parties, not an order, the court denied Plaintiff's motion to the extent an "outside counsel only" designation would be available to other non-parties. (PA ECF No. 234 (Ex. 3 hereto), adopted by PA ECF No. 237 (Ex. 4 hereto).

### D. Plaintiff's Demands for Prasco's AG Colcrys Transaction Data

#### 1. Demands Before the December 28, 2021 Dismissal

On September 13, 2021, shortly after filing the original complaint, Plaintiff subpoenaed Prasco. (ECF No. 1, Ex. 1.) Plaintiff's subject Request No. 11 for transaction data generated after January 1, 2013 is copied in the center column of Ex. 2 hereto. On September 22, Prasco responded with timely objections, including that the requests are not proportionate, are unduly burdensome (especially in light of pending motions to dismiss), and seek highly confidential information. (ECF No. 1-1 at 16.) The parties met and conferred on September 29 and October 13, 2021. On October 25, 2021, Plaintiff sent a written proposal noting that the parties in the EDPA Litigation were finalizing a "protective order agreement" that Plaintiff was "willing to abide by." *Id.* at 20-23. On November 9, 2021, Prasco responded that it would continue evaluating Plaintiff's proposal. *Id.* at 36-37. In the meantime, on December 28, the court dismissed Plaintiff's claims.

#### 2. Plaintiff's Re-Engagement After Four Months of Silence

On March 4, 2022, Plaintiff contacted Prasco for the first time since Prasco's November 9, 2021 email. Plaintiff conveyed that the court "recently" denied defendants' motion to stay

discovery and sought an update on Prasco's production.  *Id*. at 36.  On March 7, Prasco responded that given the total lack of communication, Prasco presumed Plaintiff deferred production in light of the motions that led to the December dismissal and the new motions to dismiss the amended complaint, as would be least wasteful and most protective of non-party Prasco.  Nonetheless, Prasco would move forward on open objections and productions.  *Id*. at 35-36.

On March 18, 2022, Prasco offered that, as a compromise, it would produce summary transaction data (the Transaction Reports) rather than the customer-specific line-by-line Transaction Data constituting Prasco's "most sensitive business information."  Prasco advised further that "[t]he burden of such a detailed production would also be substantial and, in our view, disproportionate and undue."  *Id*. at 32.  On March 23, Plaintiff rejected that offer, citing *Novartis* and the Protective Order Agreement, and asserting without foundation that Prasco's Transaction Data cannot be sensitive because it is "stale."  (ECF No. 1-1 at 30.)

On March 28, 2022, Prasco produced its transactional documents with Takeda, including templates of the Transaction Reports sufficient for Plaintiff to understand what Prasco offered to produce.  *Id*. at 28.  Prasco also noted as to the Transaction Data that the Protective Order Agreement is not an order but a modifiable document executed between the parties that can change at their discretion.  *Id*. at 27.  Consistent with the Lapps Decl., Prasco advised that the Transaction Data is not "stale," "given what it reveals about Prasco's relationships, methodology, and analytics applicable to current or future opportunities."  *Id*.  Further, producing the Transaction Data would be an undue burden because the pending motions to dismiss may bar Plaintiff's claims for the second time in three months and the Transaction Reports provided to Takeda over almost four years would be produced instead.  *Id*. at 27-28.

On March 30, 2022, Prasco pin-cited for Plaintiff the Transaction Report templates attached as exhibits to Prasco's agreement with Takeda, *id.* at 26, and explained that the "detail outlined in those exhibits provides a basis to examine the market in a number of ways, including, for example, calculation of Prasco's per unit net sales for the product by examining the net sales and number of units detailed in the profit split report." *Id.* Prasco also offered to supplement those reports with a customer list for AG Colcrys. *Id.* Plaintiff rejected this offer on April 1, 2022. Nonetheless, as outlined above, Prasco has now produced all the summary Transaction Reports provided to Takeda, as well as a customer list. Accordingly, as set forth below, this Court should determine that Prasco fulfilled its obligation, protect Prasco from further disproportionate burdens on its most confidential information, and not transfer the matter to the EDPA Litigation.

## LEGAL STANDARD – MOTION TO COMPEL

Discovery sought by subpoena under Rule 45 must satisfy the proportionality requirement of Rule 26. *See Progressive Health & Rehab Corp. v. Glenwood Sys. LLC*, 2017 U.S. Dist. LEXIS 177446, *5 (S.D. Ohio Oct. 26, 2017). A court considers the need of the requesting party for the documents, the breadth and particularity of the documents, and the fact that the subpoenaed entity is not a party to the litigation. *See* Fed. R. Civ. P. 45 & 26(b)(1); *Scotts Co., LLC v. Cent. Garden & Pet Co.*, 2021 U.S. Dist. LEXIS 80810, *10-11 (S.D. Ohio Apr. 22, 2021); *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018). The court must also consider whether the subpoena seeks sensitive information and protect it accordingly. *See* Fed. R. Civ. P. 45(d); *In re Ebay Seller Antitrust Litig.*, *supra* (denying motion to compel non-party to produce "competitively sensitive documents" because "[a]n antitrust action does not come with an automatic entitlement to force non-parties to reveal their competitive thinking"). Such protection is warranted here.

10

**ARGUMENT – MOTION TO COMPEL**

Under the foregoing legal standard, the Motion to Compel should be denied. Prasco already produced four years of confidential net sales, inventory, and production reports that, with the customer list produced, satisfy Plaintiff's needs proportionally. A prior decision addressing a virtually verbatim request by Plaintiff's counsel in other generic drug antitrust litigation confirms that Prasco's summary data are sufficient. Requiring further production of sensitive data would be disproportionate and not sufficiently protective of Prasco's confidentiality as a non-party.

**A.    There is No Basis for Prasco to Produce Its Most Sensitive Information**

Plaintiff cannot dispute that the Transaction Data constitute Prasco's most sensitive competitive information or the care Prasco takes to protect its Transaction Data from disclosure, including not even disclosing such data to brand partners like Takeda. Plaintiff cannot dispute that Prasco competes in the marketplace based on price and customer relationships or that disclosing the Transaction Data to Prasco's competitors, some of whom are parties to the EDPA Litigation, would cause Prasco irreparable harm by showing its competitors how it prices products for specific customers from whom Prasco's competitors would like to take its business. Nor can Plaintiff dispute that disclosing pricing methodology for AG Colcrys, even though not sold by Prasco any longer, would reveal methodology applicable to customer relationships and pricing today. Plaintiff only calls Prasco's customer Transaction Data "stale" in conclusory fashion without factual foundation. The Decl. of Jonathan Lapps, Prasco's Executive Vice President who helped manage its relationship with Takeda for AG Colcrys, puts Plaintiff's unfounded assertion to rest.

For all of the reasons to which Mr. Lapps attested, Prasco asked Plaintiff for a simple, reasonable compromise – accept summary data (the Transaction Reports) that Prasco provided to Takeda showing profit and loss, product inventory, and product production without making Prasco

disclose data showing its pricing and sales for each specific customer. Prasco, therefore, asked only to keep undisclosed the data that, if disclosed, would cause irreparable harm. Under Rule 45, courts must protect a non-party having nothing to do with the underlying case from such harm. *See, e.g., In re Ebay Seller Antitrust Litig.*, *supra*.

Plaintiff refused, even though the Transaction Reports suffice for Plaintiff to determine the amount of AG Colcrys sold and the average net selling price without linking data to any specific customer, as Lapps attested at ¶ 15. And as discussed in sections B and C below, the case law is clear that the Transaction Reports and customer list produced by Prasco suffice in antitrust litigation without invading a non-party's most sensitive customer-specific information.

Plaintiff argues that the confidentiality safeguards in the EDPA Litigation will, in any event, protect Prasco's most sensitive Transaction Data. Contrary to Plaintiff's argument, and unlike the cases cited on page 13 of the Motion to Compel, there is not and will not be a protective order in the EDPA Litigation. *See* PA ECF No. 101 (denying motion for protective order and allowing agreement between the parties for "private" discovery). The parties to the EDPA Litigation entered into a Protective Order Agreement on a "private" basis. Like any agreement, the parties may modify that agreement. Although the Protective Order Agreement now provides a Highly Confidential designation limiting disclosures to party representatives, the parties could decide that such a designation is too restrictive and that party representatives, including Prasco's competitors, need greater review and input as to confidential information produced as the case proceeds to depositions, expert reports, settlement discussions, and trial.

In that event, Prasco would not have any recourse if this Court will not preclude disclosure of the Transaction Data now. The court in the EDPA Litigation will not intercede, as it made clear in its order denying entry of a protective order. That is underscored by Plaintiff's attempt earlier

this month to modify the Protective Order Agreement to add an "outside counsel only" designation for the benefit of non-parties such as Prasco.  The court refused to modify the order because Takeda opposed (citing its desire to review information directly, beyond its outside counsel's review), and the court would not interfere with the parties' private agreement.  If this Court will not protect Prasco's most sensitive information, there is no guarantee anyone will.

That is especially true as the case enters public proceedings beyond "private discovery." The court in the EDPA Litigation refused to order such protection, citing an "exacting common law right of access" in public proceedings.  If Prasco's Transaction Data are produced, nothing may prevent their introduction into the public record after discovery (*e.g.*, summary judgment or trial).  In fact, on April 20, 2022, adopting the Special Master's recommendation to grant "outside counsel only" protection to a different non-party but deny such protection to others as warranted, the court repeated that, "**nothing in this order affects public access to information filed or presented in court**."  (PA ECF No. 237 (Ex. 4) at PageID 2, emphasis added).

A non-party located in this District should not have to monitor litigation in Pennsylvania continually and prepare to intervene whenever public disclosure of its most sensitive information is threatened.  This Court can prevent that by drawing the reasonable line between summary data and specific customer data outlined below.  *See Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus.*, 2005 U.S. Dist. LEXIS 30590 (W.D. Mich. Oct. 12, 2005) (rejecting subpoena for sales information that, if disclosed, would ruin the non-party's strategy "since the information would, most likely, become public during the ... proceedings" despite the existence of a protective order).

### B.  Prasco's Productions Satisfy Plaintiff's Needs, and Further Productions Would be Disproportionate

Plaintiff seeks Prasco's Transaction Data to identify (i) amounts sold; (ii) net prices; and (iii) class members.  (ECF No. 1 at PageID 7).  The first two items are satisfied by the Transaction

Reports produced, which itemize both the units sold and Prasco's net sales without identifying specific customer information. The third item is satisfied by Prasco's confidential customer list that it produced. Additional productions would violate Rule 45 and should be denied. *See, e.g., Suture Express, Inc. v. Cardinal Health 200, LLC*, 2014 U.S. Dist. LEXIS 162021, *1-2 (N.D. Ill. Nov. 18, 2014) (finding that non-party to antitrust action did not need to produce sales data or related financial information, because the non-party already offered to provide aggregate sales information sufficient to relevant purposes).[1]

Requiring production of the Transaction Data would be disproportionate. A federal court already ruled that summary productions like Prasco's constitute a proper response to Request No. 11 of the Subpoena. In *Novartis*, the plaintiff, represented by the same counsel as Plaintiff here, served a virtually identical request in generic drug antitrust litigation. *See* 2019 U.S. Dist. LEXIS 191606, at *7-8 (E.D. Pa. Nov. 5, 2019) and Ex. 2 hereto (comparing data requests in *Novartis* and here, and showing that the addition in subsection (a) of items (xx) and (xxii) (sic) to Plaintiff's request is the only substantive difference between Request 11 here and Request 7 in *Novartis*).

Next, the plaintiff filed a substantially similar (at times nearly verbatim) motion to compel as the motion filed here. In fact, the plaintiff relied on *Namenda* just as Plaintiff does here.[2] The

---

[1] *See also Audio MPEG, Inc. v. HP Inc.*, 2017 U.S. Dist. LEXIS 34913, *8 (N.D. Cal. Mar. 10, 2017) (denying request for non-party sales information where movant could obtain relevant damage information from alternative sources); *Cash Today of Tex. v. Greenberg*, 2002 U.S. Dist. LEXIS 20694 (D. Del. Oct. 23, 2002) (concluding that proposed conditions on a non-party subpoena permitting the non-party to produce "computer disks or reports summarizing the relevant documents" would "substantially reduc[e] the burden of complying with the subpoena such that the burden is not 'undue'").

[2] *See, e.g.*, Pltf's Mem. ISO Motion to Compel, *Novartis*, 2:19-mc-00149 (Doc. 1-1) at 13. *See also* Pltf's Mem. ISO Motion to Compel, *Novartis*, 2:19-mc-00149 (Doc. 1-1) at 12 ("Request 7 of the subpoena seeks Alembic's generic Exforge transaction-level sales data, including data showing returns, chargebacks, rebates, and other price adjustments—basically data from which the Plaintiffs can calculate the net amount of generic Exforge purchased from Alembic and the net amount paid for this generic Exforge."); *compare id.* ("Plaintiffs and their experts will use these inputs to model the quantities that Plaintiffs would have purchased, and the (lower) prices Plaintiffs would have paid for brand and generic Exforge absent the anticompetitive conduct.") *with* ECF No. 1 at PageID 7 ("Value Drug and

*Novartis* court, however, ruled that while the non-party did have to produce transaction data, the request that is virtually identical to the request at issue here is overly broad, too particular, and too burdensome on its face.  2019 U.S. Dist. LEXIS 191606 at *27.  The court allowed the non-party to "provide summaries of this material where it deems fit."  2019 U.S. Dist. LEXIS 191606 at *28.

     *Novartis* is dispositive.  In both cases, the same counsel served virtually the same disproportionate request for Transaction Data for the same reasons in the same kind of litigation.  Just as that request was too broad on its face in *Novartis*, the request is too broad here.  The summary Transaction Reports and customer list Prasco already produced satisfy its requirements exactly as the transaction data summaries ordered to be produced in *Novartis*.

### C.    Plaintiff's Authority Supports Prasco's Position or Is Irrelevant

     Plaintiff cites other sections of *Novartis* and additional authority for the common sense notion that transaction data discovery is necessary in many antitrust cases. (ECF No. 1 at PageID 6-7, 8, 10.)  Prasco does not take issue with that notion for purposes of this dispute, and, therefore, produced its confidential Transaction Reports containing such data.  Plaintiff also cited irrelevant opinions involving settlements, class certification, *Daubert* motions, or confidentiality orders having nothing to do with the issues here, requiring no rebuttal.  *Id.* at 8-9, 13.

     Plaintiff's only substantive argument arises under *Namenda,* that, somehow notwithstanding *Novartis*, a "summary" of data is inadequate.  Crucially, however, that argument relies on a selective quotation of *Namenda* obscuring the fact that Prasco offered to produce (and now has produced) at least hundreds of times more data than the non-party in that case.  *See* ECF No. 1 at PageID 9, quoting *Namenda* but deleting "a one-page" before the phrase "outline of

---

its experts will use these inputs to model the quantities that would have been purchased and the (lower) prices that class members would have paid absent the challenged anticompetitive conduct.).

customer sales data is insufficient." Prasco did not produce a "one page" summary. It produced hundreds of pages covering the entire history of its sales of AG Colcrys. *Namenda* rejected an overly truncated, arguably contrived summary, but Prasco produced a full, complete, and comprehensive summary that it actually provided to Takeda in real time over nearly four years – well before this litigation existed. There is no appropriate comparison between the two cases.

Notwithstanding the fact that Prasco is not asserting a traditional undue burden argument based on the time and effort required to assemble the Transaction Data (a subject to which Plaintiff devotes much unnecessary attention), Plaintiff also argues incorrectly that *Namenda* is "instructive" here with respect to burden. (ECF No. 1 at PageID 10-11). Even if Plaintiff shifts such an argument to a proportionality analysis, however, the Transaction Data requests here and in *Novartis* are far more extensive and unnecessary than those in *Namenda*. *See* Ex. 2. *Novartis* is the correct comparison, not *Namenda*. There is no basis to require production of the Transaction Data given production of the Transaction Reports and customer list, and the Motion to Compel should be denied. Moreover, as discussed below, this Court should make that determination.

### LEGAL STANDARD – MOTION TO TRANSFER

Absent consent, Rule 45(f) permits a compliance court to transfer a motion to compel to the issuing court only upon a finding of **exceptional** circumstances. The party moving for transfer bears the burden of showing that exceptional circumstances exist. *Williams v. Lasik Vision Inst., LLC*, 2021 U.S. Dist. LEXIS 169249, at *3 (S.D. Ohio Sept. 3, 2021). The "prime concern should be avoiding burdens on local nonparties subject to subpoenas." *Id.* A court must not assume "that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* Courts deciding whether to transfer a motion to compel consider case complexity, procedural posture and duration, the nature of the issues pending before or already resolved by the issuing court, and whether the non-party would be unduly burdened. *Id.* Transfer is only appropriate where the

interest "in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing

court" outweighs the non-party's interest in "obtaining local resolution of the motion." *Id.*

## ARGUMENT – MOTION TO TRANSFER

### A. There Are No Exceptional Circumstances Warranting Transfer

Plaintiff did not meet its burden to prove exceptional circumstances or cite even once to

that standard. Plaintiff argued only that the court in the EDPA Litigation is familiar with the "facts

of the complex underlying case" and has a strong interest in managing its case schedule. (ECF

No. 2 at PageID 4, 8). But that is true of any case. Plaintiff omitted the critical consideration that

there is nothing exceptional about the Subpoena beyond this Court's ability to resolve.

Moreover, given the lack of a protective order in the EDPA Litigation, there is actually an

exceptional circumstance warranting this Court **<u>retaining</u>** jurisdiction and deciding whether

Prasco must produce its most sensitive Transaction Data. As explained fully above in Section A

opposing the Motion to Compel, there is not and will not be any protective order in the EDPA

Litigation. Protection of confidential data during what the court called "private" discovery

depends entirely on the agreement of the parties to that litigation. They may change that agreement

at any time, for any reason, as they perceive the needs of the case to change and their clients,

including Prasco's competitors, want more direct knowledge and involvement as to testimony,

motions, exhibits, and expert reports relying on confidential information. Moreover, once

produced, the information will almost certainly become public if the case proceeds far enough.

For that reason, and the additional reasons discussed below, this Court should determine whether

Prasco must produce the Transaction Data and, if so, what protection it should be afforded.

#### 1. This Dispute Does Not Require Special Knowledge of the EDPA Litigation

Transfer is wholly unnecessary because this discovery dispute is not intertwined with, or

otherwise related to, any procedural or substantive matters at issue in the EDPA Litigation. *See,*

*e.g., Hausauer v. Trustedsec, LLC*, No. 1:20mc101, 2020 U.S. Dist. LEXIS 217812, at *17-20 (N.D. Ohio Nov. 20, 2020) (denying plaintiff's motion to transfer where the subject discovery dispute was a narrow, fact-specific issue that was unrelated "to any of the complex procedural or substantive issues in the underlying . . . litigation").[3] This Court can determine whether the Transaction Data merits protection under Rule 45 because the data are sensitive to a local non-party that is not even involved in the EDPA Litigation or known to that court. As explained above, the lack of a protective order in that litigation actually makes this Court the better forum for such a determination. Likewise, this Court can easily compare Request No. 11 in the Subpoena to the almost identical request served by the same Plaintiff's counsel in the similar *Novartis* antitrust litigation and determine whether producing the Transaction Data would be disproportionate compared to producing the Transaction Reports, just as it was in *Novartis*.

### 2. The Court Need Not Rely on Previous Decisions in the EDPA Litigation

Although Plaintiff already filed two motions to compel in the EDPA Litigation, the Court does not have to rely on those outcomes to decide the issues here. One motion to compel concerns the starting and end dates for document searches.[4] The other motion to compel concerns proposed search terms.[5] Neither court would rely on the rulings as to those motions because the issues here are completely different. Which search terms to use and how far back to look have nothing to do

---

[3]     *See also Platinum Props. Investor Network v. AMCO Ins. Co.*, No. 15-mc-213-JAR-TJJ, 2015 U.S. Dist. LEXIS 137624, at *15-16 (D. Kan. Oct. 8, 2015) (denying motion to transfer where the issues raised by the subject motion to compel did "not appear to be intertwined with issues already decided in the" underlying action); *FDIC v. Galan-Alvarez*, No. 1:15-mc-00752 (CRC), 2015 U.S. Dist. LEXIS 130545, at *10-11 (D.D.C. Sept. 4, 2015) (denying motion to transfer because the issuing court was "in no better position than" the compliance court to rule on the subject motion to quash where it presented "a legal question severable from the merits of the underlying litigation" that did "not necessitate wading into the merits or intricacies" of the underlying case); *Inter-American Dev. Bank v. Venti S.A.*, No. 16-mc-21016-Goodman, 2016 U.S. Dist. LEXIS 137762, at *21-24 (S.D. Fla. Oct. 4, 2016) (denying motion to transfer where the "independent legal issues" raised by the subject subpoena could be "adequately dealt with by the compliance court").

[4]     *See* Special Master Recommended Order No. 1, PA ECF No. 210.

[5]     *See* Mot. to Compel, PA ECF No. 182.

with protecting a non-party's most sensitive information. Accordingly, there is no risk of inconsistent rulings warranting transfer. *See Platinum Props. Investor Network*, 2015 U.S. Dist. LEXIS 137624, at * 13-14 (declining to find exceptional circumstances warranting transfer where the motion to compel previously granted by the issuing court did not involve the same issues as the discovery dispute pending before the compliance court); *Daggett v. Scott*, 2015 U.S. Dist. LEXIS 68385, at *10 (D. Colo. May 26, 2015) (declining to find exceptional circumstances warranting transfer where the issuing court's previous rulings had "little (if anything) to do with" the discovery dispute pending before the compliance court).

The cases Plaintiff cited all involve disputes closely related to the procedural and substantive issues in underlying litigation. That is especially true of this Court's decision in *Williams v. Lasik Vision Inst., LLC*, *supra*. In that case, the Court granted a motion to transfer because "the records and documents sought by the subpoena at issue have already been the subject of several motions and rulings in the underlying litigation." That is not true here. Prasco's Transaction Data have not been the subject of any such ruling.

The other cases Plaintiff cited are equally beside the point. *See Parker Compound Bows, Inc. v. Hunter's Mfg. Co.*, 2015 U.S. Dist. LEXIS 159750, at *4 (N.D. Ohio Nov. 19, 2015) (finding exceptional circumstances warranting transfer because the subject motion raised "a number of interlocking issues from the underlying litigation"); *FTC v. A+ Fin. Ctr., LLC*, 2013 U.S. Dist. Lexis 172472, at *1-2 (S.D. Ohio Dec. 6, 2013) (finding exceptional circumstances where the plaintiff's subpoena sought the production of documents from a non-party related to the non-party's communication with the defendant in the underlying litigation); *Patriot Nat'l Ins. Group v. Oriska Ins. Co.*, 973 F. Supp. 2d 173, 176 (N.D. N.Y. 2013) (granting motion to transfer

where the subject discovery dispute was whether the requested documents were relevant to the underlying litigation).

**B.      Transfer Would Place an Undue Burden on Prasco.**

Prasco readily concedes that its regular counsel in Cincinnati (who does not practice out of his firm's small Philadelphia office) can participate in a Zoom or telephone hearing in the EDPA Litigation if the court allows.  That is not the point.  The concern under Rule 45 is the burden on local non-parties, not their counsel.  Requiring Prasco to oppose Plaintiff's Motion to Compel in the EDPA Litigation would require Prasco to defend its uniquely-situated confidentiality concerns in the midst of a fast-moving, multifaceted antitrust case in a distant forum in which there are already 242 docket entries and a course of dealing on a host of issues with which Plaintiff is highly familiar but Prasco is not.  That is an unfair advantage for Plaintiff compared to resolving the dispute in this Court, where neither party is litigating this matter and the slate is clean.

Moreover, this dispute is, understandably, just one of many competing issues on the docket of the court in the EDPA Litigation.  Given the undisputed sensitivity of Prasco's confidential customer data and the threat of irreparable harm if the data were disclosed, Prasco is entitled to have the Court in its local District consider the issues without regard to competing case management considerations.  Rule 45 requires "exceptional circumstances" to disturb the presumption that the dispute will be heard here for Prasco's protection.  Plaintiff failed to cite or prove any such exceptional circumstance.  Its Motion to Transfer should be denied, and the Court should likewise deny the Motion to Compel.

Respectfully submitted,

/s/ Alan H. Abes

Alan H. Abes (Ohio Bar No. 0062423)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: (513) 977-8200
Facsimile: (513) 977-8141
alan.abes@dinsmore.com

*Trial Attorney for Prasco Laboratories*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April 2022, I served the foregoing document on all

counsel of record through the Court's electronic filing system.

/s/ Alan H. Abes