## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| VALUE DRUG COMPANY, on behalf of itself and all others similarly situated, <br><br>     Plaintiff, <br><br> v. <br><br> TAKEDA PHARMACEUTICALS U.S.A., INC., PAR PHARMACEUTICAL INC., WATSON LABORATORIES, INC., TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., and AMNEAL PHARMACEUTICALS LLC, <br><br>     Defendants. | Misc. Case No. 1:22-mc-00013-MWM-SKB <br><br><br> Underlying Action: <br> Case No. 2:21-cv-3500 (E.D. Pa.) |

### REPLY IN SUPPORT OF VALUE DRUG COMPANY'S MOTION TO COMPEL AND MOTION TO TRANSFER

**I.       Introduction**

Value Drug Company ("Value Drug") submits this reply memorandum in further support

of its Motion to Compel Prasco Laboratories ("Prasco") (ECF No. 1) and in further support of its

Motion to Transfer (ECF No. 2).

Prasco's Opposition (ECF No. 7) (the "Opposition" or "Opp.") concedes that the

requested transaction-level sales data is relevant and does not demonstrate that production of the

data would impose undue burden. Production would not be unduly burdensome as the data can

be readily produced from a centralized database, without requiring any search terms or review.

Given the lack of demonstrated burden, the requested data should be produced.[1]

---

[1] *Prado v. Thomas*, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (After a showing of relevance, "the burden shifts to the non-movant to show that to produce the information would be unduly burdensome."); *Shirk v. Fifth Third Bancorp*, 2008 WL 11352563, at *1 (S.D. Ohio Mar. 14, 2008) ("[T]he presumption is that electronically stored information is indeed discoverable.") (ordering production of electronically stored information from a "set of 'disaster recover tapes" because the

Prasco's Opposition mischaracterizes prior orders in similar cases requiring non-parties like Prasco to produce precisely the data requested here. The impropriety of Prasco's refusal to produce the requested data is further confirmed by the fact that several non-party generic companies have already produced transaction-level data in the very same transaction-level format, with customer names, that Prasco refuses to produce here. *See* Declaration of Caitlin G. Coslett dated May 9, 2022, filed herewith ("Coslett Decl."), ¶ 1.

Prasco attempts to justify its refusal to produce the requested data by complaining about the lack of a protective order signed by a judge in the underlying Pennsylvania Action,[2] but its complaints are not well taken for several reasons. First, the existing Protective Order Agreement in place in the Pennsylvania provides sufficient protections for Prasco's data.[3] Prasco complains that here is no "Protective Order" in place but the court in the Pennsylvania Action has agreed it will enforce the parties' Protective Order Agreement,[4] which provides adequate confidentiality protections because it allows Prasco to designate its sales data as "Highly Confidential," placing tight limits on its dissemination. With a "Highly Confidential" designation, employees of the parties, including the parties' in-house counsel, are not allowed to review the actual documents or data files designated "Highly Confidential" but instead may review, under limited circumstances, only expert reports, draft pleadings or pleadings that cite such "Highly Confidential" material.[5] Adding further protection, review by in-house counsel of materials

---

information "is relevant to the issues in this case" and the producing party "failed to make a sufficient showing of undue burden or cost.").

[2] The underlying "Pennsylvania Action" is *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, No. 21-cv-3500 (E.D. Pa.).

[3] *Id.*, ECF 100-1 (the "Protective Order Agreement").

[4] *Id.*, ECF 101, ¶ 1 (the court "will, upon Motion, review a claim for breach" of the Protective Order Agreement").

[5] *Id.*, ECF 100-1, Protective Order Agreement, ¶ 4.b.

citing "Highly Confidential" documents or data is limited to no more than three in-house attorneys who "do not participate in—other than to the extent they provide legal advice regarding—non-legal related business activities or decision-making in the ordinary course of their employment."[6]

Second, Value Drug does not oppose an order, entered by this Court, restricting disclosure of Prasco's sales data to outside counsel and experts in this case (though Value Drug notes that the Defendant Takeda Pharmaceuticals U.S.A., Inc. in the Pennsylvania Action has opposed entry of such a protective order, though the other Defendants did not oppose such a protective order).[7] Attached as Exhibit 7 to the Coslett Decl. is a proposed order that Value Drug previously submitted in the Pennsylvania Action—Value Drug does not oppose entry of a similar order governing Par's data and document production.[8] Entry of an order in this form by this Court would more than adequately address Prasco's concerns. In addition, in a further effort to address Prasco's stated confidentiality concerns, Value Drug offered to move the court in the Pennsylvania Action to allow Prasco to produce data on an "Outside Only Counsel" basis. While Prasco acknowledged that it "would support its inclusion as an option for documents Prasco agrees to produce or becomes compelled to produce," Prasco nonetheless instructed Value Drug to "not indicate that Prasco seeks the Designation, concurs in the motion, or that the Designation would change Prasco's position on the motion to compel or other disputes." Ex. 5 to the Coslett Decl. Prasco's refusal to support or join a request for entry of a supplemental protective order in

---

[6] Counsel for the defendants in the Pennsylvania Action recently confirmed for another subpoenaed non-party that, under the Protective Order Agreement, in-house counsel is *not* permitted to review "Highly Confidential" documents or data themselves, only briefs, etc., that cite such "Highly Confidential" material. *See* Ex. 6 to the Coslett Decl.

[7] Opp. at 8.

[8] Ex. 7 to the Coslett Decl.

the Pennsylvania Action shows that Prasco is making no attempts to obtain the confidentiality protections for its data that it claims are necessary, refuting its own argument that production may be withheld on the basis of purported confidentiality concerns.

Third, Prasco fails to show how production of historical sales data records—for a time period concluding in July 2018—pertaining to a single product Prasco does not even sell anymore (authorized generic Colcrys) would constitute a competitive threat.

Fourth, Prasco's production of a customer list and summary profit reports (*not* "summary transaction data" as Prasco incorrectly describes them) showing revenues that Prasco received on a monthly basis is insufficient. Transaction-level sales data that identify purchasers/customers are necessary to calculate damages, identify class members, and respond to arguments regarding size and timing of individual class members' purchases. The customer list and summary profit (not sales) reports that Prasco has produced do not allow Value Drug to (a) identify purchasers during the class period or during other specific time periods during which Value Drug may seek damages, (b) identify when class members purchased authorized generic Colcrys from Prasco, or (c) calculate prices paid or volumes purchased by class members. In addition, the produced summary profit reports may include information regarding discounts not paid to direct purchasers, but there is no way for Value Drug to separately account for those discounts (which *are not* relevant to class members' prices paid, and so *are not* relevant to damages) from line items in the profit report that are paid to direct purchasers (which *are* relevant to damages here).

In addition, Prasco provides no basis to deny Value Drug's Motion to Transfer. Discovery disputes in the Pennsylvania Action have been conducted remotely, by Zoom, and Prasco's counsel itself recently attended a Zoom hearing in the Pennsylvania Action, proving that transfer will not be burdensome.

4

Finally, the Pennsylvania Action is proceeding on an expedited schedule and Value Drug's class certification reports are due in approximately two months, on July 21, 2022.[9] Prasco's transaction-level sales data are undisputedly relevant to these reports as they are relevant to, *inter alia*, damages, identifying class members, and other class certification issues. Value Drug therefore respectfully requests that this Court act quickly and compel Prasco to produce the requested transaction-level data immediately (with additional protective order protection if the Court deems that to be warranted), or, in the alternative, grant Value Drug's Motion to Transfer so that Value Drug may seek prompt resolution of this dispute in the Eastern District of Pennsylvania, where the Court-appointed Special Master is required to rule on discovery motions within five days of the motions being briefed,[10] and where the Special Master has committed to scheduling Zoom argument on motions within 72 hours of the date of the filing of the motion in order to quickly resolve discovery disputes.[11]

## II. Production of the Requested Sales Data Is Not Unduly Burdensome

### A. The Relevance of the Requested Transaction-Level Sales Data Outweighs Any Burden to Prasco

When evaluating burden arguments a court considers "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court."[12] Here the requested data are very relevant, and their relevance far outweighs any burden

---

[9] Scheduling Order, *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, No. 21-cv-3500 (E.D. Pa.), ECF 94, ¶ 11.

[10] Mar. 10, 2022 Hrg. Tr. 94:22-95:2, *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, No. 21-cv-3500 (E.D. Pa.) (Ex. 8 to the Coslett Decl.) ("the master has five days to rule after submission"); *id.* ("[I]t's five days or I withdraw the Rule 53 referral.").

[11] *See Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, No. 21-cv-3500 (E.D. Pa.), ECF 245, ¶ 2.

[12] *Reid v. United States Postal Serv.*, 2009 WL 10679572, at *2 (S.D. Ohio May 5, 2009) (granting motion to compel) (internal quotation omitted).

to Prasco.[13] Prasco concedes, as it must, that it is a "common sense notion that transaction data discovery is necessary in many antitrust cases." Opp. at 7. Indeed, Prasco does not dispute that its transactional data are relevant to two vital issues in the larger antitrust case: calculation of overcharge damages incurred by direct purchasers and the identification of class members. Opp. at 9-16. Prasco also does not dispute that its sales data are not obtainable from any other source.

Prasco's unsupported argument that production would be burdensome because of the risk of competitive harm does not justify its refusal to produce the requested data. As set forth above, any risk of competitive harm is addressed by the Protective Order Agreement in the Pennsylvania Action, and can be further addressed with a supplemental protective order protecting Prasco's data production, again, if the Court deems finds such an order to be warranted. Courts have ruled exactly this in similar cases compelling production of the same transaction-level sales data Value Drug seeks here given the confidentiality protections afforded by protective orders.[14] As set forth above, Value Drug does not oppose entry of such an order, and indeed offered to seek one in the Pennsylvania Action, but held off in light of Prasco's objections and lack of support for such a motion.

Even setting aside confidentiality protections for the data, production of these data pose little if any risk of competitive harm to Prasco because Value Drug seeks sales data covering only a single drug product (authorized generic Colcrys) covering a period of time lasting fewer than four years, that ended in July 2018. As Prasco concedes, it no longer sells authorized

---

[13] Granting a similar motion to compel sales data from a non-party generic, another court explained "that Movants have demonstrated particular need for [the] sales data." *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, 2017 WL 4230124, at *4 (S.D. Fla. May 15, 2017) ("*Apotex*").

[14] *See Apotex*, 2017 WL 4230124, at *5 (finding that the "Protective Order will provide sufficient protection of Respondent Apotex Corp.'s sales data"); *In re K-Dur Antitrust Litig.*, 2003 WL 27375780, at *2 (S.D. Fla. Aug. 21, 2003) (third party's confidentiality concern "is addressed by the implementation of an appropriate confidentiality order").

generic Colcrys. "It is reasonable to assume that the risk of competitive harm is lower in disclosing historical business records over more recent ones." *United States ex rel. Scott v. Humana Inc.*, 2021 WL 4449277, at *4 (W.D. Ky. Sept. 28, 2021). *See also Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 308 (6th Cir. 2016) ("[T]he particulars of years-ago negotiations are unlikely to amount to a trade secret"). Despite the narrow scope of the request and the fact that the data are historical, Prasco claims that production would threaten disclosure of a "pricing methodology." But Value Drug is not seeking production of documents that relate to Prasco's pricing methodology, but rather is seeking only a narrow production of sales data. Prasco fails to show how production of historical sales records pertaining to a single product Prasco does not even sell anymore would constitute a competitive threat (it would not). Prasco therefore has failed to articulate any cognizable burden to production, much less a burden that outweighs the undisputed relevance of the requested transaction-level sales data.

B.      **Prasco's Confidentiality Concerns Can Be Adequately Addressed With a Supplemental Protective Order**

"[T]here is no absolute privilege for trade secrets and similar confidential information." *Snyder v. Fleetwood RV, Inc.*, 2015 WL 13002292, at *4 (S.D. Ohio Jan. 30, 2015) (quoting *Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362-63 (1979)) (granting motion to compel). "To the extent that [a discovery respondent] contends that the information sought . . . is deserving of some level of protection, [it] may seek a protective order under Fed.R.Civ.P. 26(c)(1)(G)." *Id*.

Contrary to Prasco's argument, the existing Protective Order Agreement in the Pennsylvania Action adequately addresses Prasco's confidentiality concerns, and if the Court thinks any additional protection is required it can issue a supplemental protective order further limiting disclosure of Prasco's sales data. A "subpoena should not be quashed or modified where

7

the court can devise an appropriate accommodation to protect the interests of the witness, such as a protective order or a confidentiality stipulation.*" In re Salomon Bros. Treasury Litig.*, 1994 WL 62852, at *2 (S.D.N.Y. Feb. 22, 1994) (internal quotation marks omitted). *Apotex*, 2017 WL 4230124, at *5 (protective orders "will provide sufficient protection of [non-party's] sales data"); *K-Dur*, 2003 WL 275780, at *2 (concern over confidentiality "arises in many cases, and is addressed by the implementation of an appropriate confidentiality order").

The existing Protective Order Agreement in the Pennsylvania Action provides sufficient protection. The Protective Order Agreement provides adequate confidentiality protections because it allows Prasco to designate its sales data as "Highly Confidential," placing tight limits on its dissemination to employees of the parties, including to the parties' in-house counsel.[15] And the court in the Pennsylvania Action made clear that it will enforce the Protective Order Agreement—rather than issue an order, the court stated that "parties may provide for confidentiality in their private discovery by way of a confidentiality agreement."[16]

Moreover, another non-party generic has already successfully moved for an order providing for production on an "Outside Counsel Only" basis in the Pennsylvania Action.[17] The Special Master in that Action has explained that other non-parties, like Prasco, may request the same heightened "Outside Counsel Only" protection "on a case-by-case basis."[18] However, Prasco declined to join Value Drug's effort to seek such heightened protection.[19]

---

[15] Protective Order Agreement, ¶ 4.b.

[16] *Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, No. 21-cv-3500 (E.D. Pa.), ECF 101.

[17] The Court's April 20, 2022 Order allows "non-party Mylan Pharmaceuticals, Inc. to designate as for 'Outside Counsel Only' review only after determining, in good faith, each piece of information in the designated material is highly commercially sensitive." *Id.*, ECF 237, ¶ 2.

[18] *Id.* ECF 234.

[19] Ex. 5 to the Coslett Decl.

In correspondence, Prasco's counsel has argued that "Outside Counsel Only" protections would be inadequate,[20] but courts have found that such heightened protection is sufficient to allow discovery of competitively sensitive information. An "[attorneys only] designation can be justified upon a specific factual showing that especially sensitive information is at issue or the information is to be provided to a competitor." *Smith v. FirstEnergy Corp.*, 2021 WL 1940234, at *3 (S.D. Ohio May 14, 2021). *See also In re Novartis and Par Antitrust Litig.*, 2019 WL 5722055, at *10 (E.D. Pa. Nov. 5, 2019) ("*Novartis*") ("An analysis of other decisions from federal district courts establishes producing sales documents under 'Attorney's Eyes Only' is not out of the ordinary."); *Apotex*, 2017 WL 4230124, at *4 (S.D. Fla. May 15, 2017) ("Courts faced with analogous situations typically favor limited disclosure."); *Verisign, Inc. v. XYZ.com, LLC*, 2015 WL 7960976 (D. Del. Dec. 4, 2015) (ordering production of confidential financial and sales information to competitor under "Attorney's Eyes Only" designation).

And, as noted above, Value Drug does not oppose this Court entering a supplemental protective order to govern Prasco's production, which can include an "attorneys' eyes only" designation, to protect Prasco's confidentiality interests. This Court certainly has the power to do so. *See Marcum v. Scioto Cty., Ohio*, 2012 WL 2018523, at *7 (S.D. Ohio June 5, 2012) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984)). *See also Apotex*, 2017 WL 4230124, at *5 (ordering non-party to produce generic drug sales for "Attorney's Eyes Only"); *Novartis*, 2019 WL 5722055, at *11 ("this Court will allow the outside attorneys only, not in-house counsel, to access material deemed Highly Confidential"). Upon granting the Motion to Compel, this Court may direct the parties to submit a proposed protective order. *Marcum*, 2012 WL 2018523, at *7 n.3 (granting motion to compel and requiring "that the parties fashion a proposed

---

[20] *Id.*

9

protective order that appropriately protects any confidential information disclosed through the production"). As noted above, Value Drug has submitted in the Pennsylvania Action a Proposed Protective Order that could govern Prasco's production, as modified by this Court at the Court's discretion.[21]

### C. Prasco Mischaracterizes Prior Cases Compelling Non-Parties To Produce the Very Same Transaction-Level Data That Value Drug Requests Here

Much of Prasco's opposition is spent discussing two cases: *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4700367 (S.D.N.Y. Oct. 19, 2017) ("*Namenda*") and *Novartis*, 2019 WL 5722055. Prasco misstates the record in both cases. Both compelled production of sales data and, following the court orders granting the plaintiffs' motions to compel, the non-parties produced the same transaction-level data that Value Drug seeks here.

Prasco suggests that *Namenda* can be distinguished because, in comparison to an insufficient one-page data summary initially produced in *Namenda*, Prasco has already produced "hundreds of times more data." Opp. at 15. But in *Namenda* the court compelled the non-party to produce transaction-level data that "detail[ed] sales specific to customers, and those sales could inform an analysis of class member damages and injuries." *Namenda*, 2017 WL 4700367, at *3. And following the court's order, the nonparty generic in *Namenda* **did produce transaction-level sales data**.[22] The lack of transaction-level detail in Prasco's existing production must be remedied here, just as it was in *Namenda*, and the Court should enter a similar order compelling production of the requested transaction-level sales data. And Prasco's argument that the data requested in *Namenda* somehow differs from the data requested in this case is wrong. The

---

[21] Ex. 7 to the Coslett Decl. (*Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, No. 21-cv-3500 (E.D. Pa.), ECF 218-4).

[22] Coslett Decl. ¶ 3.

subpoena in *Namenda*, like the subpoena here, requested transaction-level records for sales, returns, and all types of price adjustments to direct purchasers.[23] That the subpoena requests are not identically worded does not change anything—*Namenda* is directly on point and the same result should obtain here.

Regarding *Novartis*, Prasco contends that the non-party generic, despite a court order to produce sales data, merely produced "summaries" rather than transaction-level sales data. Opp. at 15. Prasco is incorrect. *Novartis* addressed multiple subpoena requests and did allow "summaries," but does not state that the non-party generic is excused from producing transaction-level sales data, and in fact, the non-party generic in *Novartis* **complied with the court order and produced the requested transaction-level sales data**. 2019 WL 5722055 at *6; Coslett Decl. ¶ 4.

In addition to failing to distinguish *Namenda* and *Novartis*, Prasco simply ignores other decisions compelling non-parties like Prasco to produce transaction-level sales data. In particular, Prasco makes no effort to address *Apotex*. There the non-party generic made nearly identical arguments to the arguments Prasco raises here. As the court put it, the generic's "concern [wa]s that the Protective Order in place in the Antitrust Litigation does not provide sufficient protection" because "none of the parties in the Antitrust Litigation would have an interest in enforcing the Protective Order with respect to its sales data." 2017 WL 4230124, at *5. The court rejected the non-party's argument because the court was "not so pessimistic" that a "Protective Order will provide sufficient protection" because "[t]here is no reason to assume that

---

[23] *Namenda*, 2017 WL 4700367, at *1 ("The subpoena seeks Macleods' 'sales data for generic versions of Namenda in electronic format, at the transactional level,' including the date of the transaction, the transaction type, the customer's name, bill-to customer information, ship-to customer information, dosage strength, package size, NDC code, and the number of units and dollar amount involved in the transaction, among other information.").

the parties, through their lawyers, will not comply with this Court's order, or the Protective Order in the Antitrust Litigation." *Id*.

In short, courts have repeatedly ordered non-parties to produce the same transaction-level data that Prasco improperly withholds here, including in *Namenda*, *Novartis*, and *Apotex*, and non-parties have repeatedly produced the same transaction-level data that Value Drug seeks here, including following court orders in *Namenda*, *Novartis*, and *Apotex*. And several non-parties have already produced this exact same transaction-level data in this case, in response to the same request with which Prasco has refused to comply. Coslett Decl. ¶ 1. Prasco's position is unsupported in the law and should be rejected here, just as similar non-party arguments have been repeatedly rejected in other cases.

**D.      Prasco's Customer Lists and Aggregated Profit Reports Are Not Sufficient**

In lieu of the requested transaction-level sales data, Prasco unilaterally produced a list of customers/purchasers and "Net Distributable Profit Reports" ("summary profit reports")[24] that contain no customer/purchaser-specific information. Prasco's production is not sufficient for several reasons.

First, the produced list of customers/purchasers and net profit reports do not allow Value Drug to identify *when* these purchasers purchased authorized generic Colcrys from Prasco. Production of the requested transaction-level data (with purchaser/customer names) will allow Value drug to identify who purchased from Prasco and when, which is relevant to class certification because this will allow Value Drug to identify who purchased from Prasco *during the class period* and the volumes and prices paid by class members *during the damages period*

---

[24] Given Prasco's confidentiality concerns, Value Drug has not filed herewith any of the "Net Distributable Profit Reports" that Prasco produced, but can submit exemplars at the Court's request.

(which will be the subject of expert discovery).

Second, the list of purchasers and net profit reports that Prasco has produced do not allow Value Drug to calculate the prices any specific class member paid or the amounts of authorized generic Colcrys purchased—that calculation requires production of the transaction-level sales data, with customer names, that Prasco refuses to produce. Such calculations are relevant to class certification because Defendants in pharmaceutical antitrust cases like the Pennsylvania Action often argue that the prices certain class members paid were not impacted by the challenged conduct. *See In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 189 (3d Cir. 2020) (defendants "argu[ing] that some Direct Purchasers never paid more for [the drug product] than they would have absent" the challenged conduct); *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 208-09 (S.D.N.Y. 2018) (defendants argued certain class members "were not injured because they never bought" the drug at issue during the correct time period). Value Drug is entitled to Prasco's transaction-level sales data, *with* customer names, to address class certification arguments like these.

Third, and relatedly, transaction-level data, with customer names, is relevant to the calculation of the volumes of authorized generic Colcrys each class member purchased and prices paid, which in turn can be used to estimate class members' individual damages. This too is relevant to class certification—courts in other pharmaceutical antitrust cases have found the size of individual class member claims to be relevant to class certification. *See, e.g.*, *Namenda*, 331 F. Supp. 3d at 220 (consider whether individual class members' individual damages claims may be lower than the cost of suing individually in evaluating whether the class should be certified). Data showing the amount of generic Colcrys purchased and prices paid by each Class member are relevant to the size of individual class members' claims, which courst have found relevant to

13

class certification, and thus customer names should be provided in the requested transaction-level sales data.

Fourth, the summary net profit reports Prasco produced include only an aggregate "net" dollar amount that Prasco realized. However, this may differ from the net prices class members paid because the net amount Prasco received may reflect monies or discounts not given to direct purchasers (e.g., rebates to pharmacy benefit managers or health insurers who are not members of the class Value Drug seeks to represent in the Pennsylvania Action). Value Drug is thus entitled to transaction-level sales data, which courts often find relevant to the calculation of damages. *E.g.*, *Everlight Elecs. Co. v. Nichia Corp.*, 2015 WL 412184, at *2 (E.D. Mich. Jan. 30, 2015) (ordering a party to supplement its production with sales data, under Rule 26(e)(1)(A), because the data would be "an important factor for the jury's consideration in fashioning a damages award," rendering the "failure to provide complete sales information" prejudicial); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (relying on expert analysis of "claims and potential damages based on sales data produced by Defendants, Plaintiffs, and the pharmaceutical industry itself"); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294, 303 (D. Mass. 2021) (classwide injury established through, *inter alia*, analysis of transaction-level sales data); *In re Niaspan Antitrust Litig.*, 464 F. Supp. 3d 678, 702 (E.D. Pa. 2020) (finding "transactional level purchase data regarding purchases of Niaspan and its generic equivalents during the class period" relevant to identifying class members).

## III.     Value Drug's Motion to Transfer Should Be Granted

In opposing Value Drug's Motion to Transfer, Prasco argues that transfer to Pennsylvania would constitute an undue burden on Prasco. Opp. at 20. As Prasco acknowledges, its counsel can, with little or no burden, participate remotely in the Pennsylvania Action. Opp. at 20. In fact, discovery disputes are being heard by Zoom in the Pennsylvania Action and counsel for Prasco

14

has already appeared remotely in a hearing in the Pennsylvania Action.[25]

In addition, the cases Prasco cites do not support denying transfer here. In *Hausauer v. Trustedsec, LLC*, 2020 WL 6826368, at *6 (N.D. Ohio Nov. 20, 2020), but the discovery dispute there was "not intertwined with, or otherwise related to, any procedural or substantive issues being litigated in the MDL litigation." Here, in contrast, assessing the value of Prasco's transaction-level sales data is related to key issues in the Pennsylvania Action such as class certification and damages. The other cases cited by Prasco are also distinguishable.[26]

Transfer is also appropriate given how rapidly the Pennsylvania Action is proceeding and how efficiently the action is being conducted in Pennsylvania. In the Pennsylvania Action, discovery motions are presented to a court-appointed Special Master, who has attained familiarity with the underlying facts and resolves disputes without delay. Moreover, delay in resolving Value Drug's dispute with Prasco may be problematic given that class certification reports are due in July 2022 and the underlying case is scheduled for trial in February 2023.

## IV. CONCLUSION

For the reasons stated above, this Court should (1) grant Value Drug's motion to compel Prasco's transaction-level sales data, or (2) grant Value Drug's motion to transfer this matter to the Eastern District of Pennsylvania.

---

[25] Coslett Decl. ¶ 2.

[26] In *Platinum Props. Investor Network v. AMCO Ins. Co.*, 2015 WL 5883819, at *6 (D. Kan. Oct. 8, 2015) transfer was found to be an undue burden because the subpoenaed "files and related documents" were located in the district considering the motion to transfer. As noted above, here, Prasco has not raised the issue of cost presumably because its transaction-level sales data is readily produced electronically. In *Inter-American Dev. Bank v. Venti S.A.*, 2016 WL 5786982, at *7 (S.D. Fla. Oct. 4, 2016) the court acknowledged that "the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved" in the underlying action may justify transfer. The *Inter-American* case, however, concerned post-judgment proceedings to collect debt. *Id*. In *Inter-American* the underlying case was already closed and had "lasted about three and a half months" and "was likely resolved without any real opposition." In contrast, here, the Pennsylvania Action is a complex ongoing proceeding with a Special Master specifically appointed to consider discovery disputes.

Dated: May 9, 2022                              VORYS, SATER, SEYMOUR AND
                                               PEASE LLP

                                               /s/ Emily E. St. Cyr
                                               Emily E. St. Cyr
                                               301 East Fourth Street, Suite 3500
                                               Great American Tower
                                               Cincinnati, OH 45202
                                               (513) 723-4674
                                               (513) 852-7851 – fax
                                               eestcyr@vorys.com


                                               BERGER MONTAGUE PC
                                               Caitlin G. Coslett, *Pro Hac Vice*
                                               1818 Market Street
                                               Suite 3600
                                               Philadelphia, PA 19103
                                               215-875-3000
                                               215-875-4604 – fax
                                               ccoslett@bm.net

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically with the Court this 9th day of May,

2022. Service will be made by the Court's electronic notification system, and all parties may

access this filing through the Court's system.


*/s/* Emily E. St. Cyr
Emily E. St. Cyr